IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BERNARDO HARDEN | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. AW-09-124 |
| WARDEN, *et al.* | : | |
| Defendants | : | |

o0o

## MEMORANDUM

Pending is Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 25. Plaintiff opposes the motion. Papers No. 27 and 28. Also pending are Plaintiff's Motions for Appointment of Counsel. Papers No. 18 and 21. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2009).

### Motions for Appointment of Counsel

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[1] is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*.

Plaintiff alleges he was assaulted by correctional officers. Paper No. 1. Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has

---

[1] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1). Accordingly, his motions shall be denied.

**Background**

Plaintiff claims on October 13, 2008, he was taken into holding cell in housing unit one at North Branch Correctional Institution (NBCI) where he is incarcerated. Paper No. 4. He was told by officers to remove his clothing and he complied. *Id*. After Plaintiff had removed all of his clothing, Officers Gutillo and Miller allegedly began making lewd and obscene comments prompting Plaintiff to end his compliance with the strip search procedure. *Id*. Upon stating his non-compliance, Plaintiff claims he was assaulted by Gutillo, Miller, Self , Lambert and Mallow who repeatedly stomped, kicked and punched him in his face while he was on the floor. When he was lifted to his feet his face was banged into the wall and he was told he would be "maced like Iko."[2] Plaintiff claims his head was repeatedly banged against the wall and he was called racially offensive names throughout the assault. Plaintiff's hands were then cuffed and a tether was attached to the cuffs. He claims the officers used the tether to yank his arms through the slot in the cell door resulting in nerve damage to his hands. Plaintiff states it felt as though his ribs were broken after the incident, but his requests for an x-ray to verify his suspicions were denied.

Plaintiff further alleges the assault was in retaliation for an administrative remedy procedure (ARP) request he had put in concerning the fact that the shoes he had were not suitable to wear during the winter months because they had holes in the bottom. Paper No. 4 at

---

[2] Ifeanyi Iko was an inmate incarcerated at Western Correctional Institution (WCI) who died after he was maced by correctional officers. None of the officers involved were criminally charged for his death. *See Iko v. Shreve*, 535 F. 3d 225 (4th Cir. 2008).

p. 2. He further claims that his incoming and outgoing mail has been stolen and tampered with, and his grievances regarding the problem have not been addressed properly. He also claims the investigation into his complaints about the mail lasted approximately one week and was not a full investigation. He further claims that his cell assignment was changed in order to set him up for physical harm if he went outside for recreation in retaliation for his ARP concerning his shoes.

Defendants claim the use of force against Plaintiff was justified by his refusal to obey a direct order to cooperate with a lawful strip search. They state that Plaintiff first refused to bend over and then, when officers moved in, he assumed a fighting stance with clenched fists. As officers were attempting to restrain Plaintiff, they claim he was making noises like he was going to spit on them. In order to prevent Plaintiff from doing so, his head was placed against the wall and held there until a spit mask could be brought to the scene. Defendants admit Plaintiff was told he would be pepper sprayed if he did not comply with orders. Paper No. 25 at Ex. 1, p. 21. They state Officer Self brought a spit mask into the cell where Gutillo placed it on Plaintiff's head. Gutillo and Self held Plaintiff against the wall until medical staff arrived to examine him. After Nurse Burdock arrived and performed an assessment of Plaintiff, Officer Faris handcuffed him and placed a tether on the cuffs. Gutillo and Self put a jumpsuit on Plaintiff and Officer Robey photographed him. Plaintiff was escorted by Self, who held his right arm, Gutillo, who held his left arm, and Farris, who held the tether. *Id*. at p. 26.

An investigation into Plaintiff's allegations was prompted by a letter from the State's Attorney's Office for Allegany County. Paper No. 25 at Ex. 1. As part of the investigation, video from the tier camera was reviewed and it was determined that the video supported the reports of staff involved in the incident. The video recording did not include sound.

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its]

pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

## Analysis

### Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). If the injuries sustained as a result of the alleged excessive is *de minimis*, Plaintiff cannot prevail on an Eighth Amendment claim, unless extraordinary circumstances are present. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). "Extraordinary circumstances are present when the force used is of a sort repugnant to the conscience of mankind for the pain itself is such that it can properly be said to constitute more than de minimis injury." *Taylor v. McDuffie*, 155 F. 3d 479, 483 (4th Cir. 1998); *see also Riley v. Dorton*, 115 F. 3d 1159, 1166 (4th Cir. 1997) (record must support a finding that plaintiff sustained more than de minimis injury).

It is undisputed that Plaintiff declined to cooperate with the strip search. *See* Paper No. 27. Whether offensive language was uttered to prompt his uncooperative spirit, while disputed, is not material to the determination of whether there was a need for force. The force applied by Defendants was used to enforce a lawful order that Plaintiff admits he disobeyed. In addition, it is undisputed that Plaintiff assumed a fighting stance when approached by Gutillo. Paper No. 25

at Ex. 1, p. 12. Thus, force was applied in a good faith effort to restore discipline. The resulting injuries, abrasions to Plaintiff's chest, were minor at best. *Id*. (noting injuries as "3 small scratches to left chest approx. ¼ inch wide and 2 inches long" and "no complaints voiced by inmate"). Plaintiff's claim that he suffered nerve damage, post-traumatic stress, and headaches, is not substantiated by the record. As discussed by the Fourth Circuit:

> The *de minimis* injury exception stems from the recognition that there is "a *de minimis* level of imposition [of punishment] with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674(1977); *cf. Hudson v. McMillian*, 503 U.S. 1 (1992). Such "*de minimis* uses of physical force" are "necessarily exclude[d] from constitutional recognition" and not cognizable under § 1983. *Riley*, 115 F.3d at 1166. We applied the *de minimis* rule of Hudson, holding that "a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." *Norman*, 25 F.3d at 1263. And, we extended that rule to claims under the Due Process clause in *Riley*. *Riley*, 115 F.3d at 1166. Although the Constitution does "not require that an injury be serious or leave visible marks or scars" to be actionable, we held that "*de minimis* injury can serve as conclusive evidence that de minimis force was used." Riley, 115 F.3d at 1168 (quoting *Norman*, 25 F.3d at 1261). Force that is "of a sort repugnant to the conscience of mankind" *see Hudson*, 503 U.S. at 10 (internal quotation marks omitted), is "expressly outside the *de minimis* force exception," *Norman*, 25 F.3d at 1263 n.4. *See also Riley*, 115 F.3d at 1168 n.4 (listing, as examples of such repugnant force, acts such as "forcibly pumping a suspect's stomach for evidence after unlawfully entering his house and bedroom or severely whipping and hanging a suspect in order to obtain a confession." (internal citations omitted)).

*Carr v. Deeds*, 453 F.3d 593, 606 n.4 (4th Cir. 2006).

Thus, in light of the *de minimis* nature of Plaintiff's injuries, Defendants are entitled to summary judgment in their favor with respect to the excessive force claim.

## Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th

Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the Defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*,  240 F. 3d 383, 390 (4th Cir. 2000), *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on

precautions actually taken in light of suicide risk, not those that could have been taken).

Plaintiff's claim with respect to medical care is that he wanted an x-ray to confirm that his ribs were broken, but his request was denied. Paper No. 4. Taking the allegation as true, it fails to state a claim of deliberate indifference to a serious medical need. Defendants recognized a need for medical attention following the application of force and medical attention was supplied. Paper No. 25 at Ex. 1, p. 12 (noting that Plaintiff was examined by a nurse following his restraint). The decision regarding whether to x-ray Plaintiff's ribs was based on a medical assessment that no notable deformity was found; therefore, an x-ray was not warranted. *Id*. at p. 14. Plaintiff's disagreement with medical opinion as to whether the expense of an x-ray was required by the circumstances is not sufficient to state an Eighth Amendment claim. Without objective evidence that Plaintiff had a serious need for the medical attention at issue, Defendants cannot be held liable for denial of medical attention. *See Grayson v. Peed*, 195 F. 3d 692, 695 (4th Cir. 1999) *see also Belcher v. Oliver*, 898 F. 2d 32, 35 (4th Cir. 1990). Accordingly, Defendants are entitled to summary judgment in their favor on this claim.

A separate Order follows.

Date: January 25, 2010                                 _____/s/_____
                                                                          Alexander Williams, Jr.
                                                                          United States District Judge